## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**DAVID BURTON,**

        **Plaintiff,**

        **v.**                            **Case No.  94-2202-JWL**

**R.J. REYNOLDS TOBACCO CO.,**

        **Defendant.**

_____

## MEMORANDUM AND ORDER

Plaintiff David Burton filed this personal injury products liability action against defendants Brown & Williamson Tobacco Corporation f/k/a American Tobacco Co. and R.J. Reynolds Tobacco Company.  The case proceeded to a jury trial, and the jury returned a verdict in plaintiff's favor and awarded plaintiff compensatory and punitive damages.  On appeal, the Tenth Circuit affirmed the compensatory damage award against Reynolds and reversed the award of punitive damages.  This matter is now before the court on plaintiff's bill of costs (Docs. 736 & 753) and Reynolds' Motion to Strike and Opposition to Plaintiff's Bill of Costs (Doc. 740).  For the reasons explained below, the court will grant the motion in part, deny it in part, and take the remainder under advisement.  More specifically, the court will propose to tax costs against Reynolds in the amount of $31,783.60 and will allow the parties an opportunity to submit supplemental briefs, including additional evidentiary materials where pertinent, to clarify whether particular itemized expenses should be taxed under the parameters outlined below.

## PROCEDURAL HISTORY

Plaintiff David Burton filed this lawsuit in 1994. In the lawsuit, he claimed that defendants' cigarettes caused his peripheral vascular disease and addiction. After nearly eight years of pretrial preparation, the case proceeded to a jury trial on February 5, 2002. Ultimately, the jury returned a verdict in plaintiff's favor on three of his claims, awarded him $196,416 in compensatory damages and authorized punitive damages against Reynolds, and awarded him $1,984 in compensatory damages from American Tobacco. Plaintiff and American Tobacco reached a settlement after trial and plaintiff dismissed his claims against American Tobacco with prejudice. The court awarded plaintiff $15 million in punitive damages from Reynolds. On February 9, 2005, the Tenth Circuit affirmed the jury verdict against Reynolds on plaintiff's negligent failure to warn and test claims and the award of compensatory damages, but reversed the verdict on liability as to plaintiff's fraudulent concealment claim and the pendent $15 punitive damage award. *See generally Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906 (10th Cir. 2005).

On March 11, 2005, plaintiff filed his bill of costs (Doc. 736) seeking $503,570.61 as his costs in this action. This court received the Tenth Circuit appeal mandate on May 16, 2005, and entered a second amended judgment on May 17, 2005. On May 18, 2005, Reynolds filed a Motion to Strike and Opposition to Plaintiff's Bill of Costs (Doc. 740). On June 30, 2005, plaintiff filed an amended bill of costs (Doc. 753) seeking $503,249.37 as his costs. He subsequently filed supplemental supporting documentation (Doc. 752). In light of

2

plaintiff's filing of the amended bill of costs and supplemental documentation, the court permitted the parties to submit supplemental briefs addressing the issue of plaintiff's costs in this case.  Thus, each of the parties has had an opportunity to fully address the issue of costs.

The clerk has not yet taxed costs against Reynolds.  The court recognizes, however, that requiring the clerk to perform this typically ministerial function would be both unduly burdensome and futile given the hotly contested nature of the voluminous bill of costs exceeding more than a half million dollars.  The court therefore ordered the parties to show cause (Doc. 758) why the court should not definitively resolve the issue of costs based on the record currently before the court without requiring the clerk to tax costs in the first instance.  Plaintiff did not respond and Reynolds responded that it does not object to the court ruling on the issue of costs without requiring the clerk to tax costs in the first instance.  Without objection from the parties, then, the court will proceed to resolve this issue.

In doing so, the court wishes to draw attention to the nature of the record currently before the court.  Plaintiff has filed a bill of costs exceeding a half million dollars.  His itemization is 62 pages and his supporting documentation is 729 pages.  As discussed in more detail below, the overwhelming majority of plaintiff's claimed costs clearly are not taxable under the applicable federal cost statute, 28 U.S.C. § 1920.  Plaintiff, rather than recognizing this and devoting his efforts to providing meaningful information to the court so that the court can determine the extent to which arguably taxable costs should be taxed, instead categorically argues that the court should sanction Reynolds pursuant to Rule 11 of the Federal Rules of Civil Procedure and award plaintiff all of these costs.  The court is not, however, going to

3

sanction Reynolds because, as explained below, it is unpersuaded that such sanctions are warranted under Rule 11. Consequently, plaintiff's failure to provide the court with more detailed information concerning many of the itemized expenses is not particularly helpful and often inadequate to allow the court to determine whether particular costs should be taxed against Reynolds. Thus, although the record at this procedural juncture is voluminous, the *meaningful* record with respect to many of the particular itemized costs is unfortunately scant.

For this reason, the court will utilize the following procedure. First, the court is issuing below its proposed ruling on plaintiff's bill of costs. The court realizes that once the parties have the benefit of the court's ruling concerning the parameters under which the court intends to tax costs they may be able to provide more meaningful information concerning whether particular costs fall within those parameters. The court, then, will allow the parties to submit supplemental briefs, including any additional evidentiary materials that they believe to be pertinent, asking the court to modify its position with respect to specific costs and specifically addressing the costs which the court is taking under advisement. At that time, the court will not be inclined to revisit the parameters under which it intends to tax costs. Rather, the court simply wishes to give the parties a final opportunity to clarify the nature of particular itemized costs so that the court can accurately determine whether they should be taxed. In doing so, the court is attempting to provide a meaningful substitute for the usual procedure of allowing the parties to seek review of the clerk's taxation of costs. *See* Fed. R. Civ. P. 54(d)(1) ("[T]he action of the clerk may be reviewed by the court.").

## DISCUSSION

For the reasons set forth below, the court denies Reynolds' request for the court to entirely disallow plaintiff's costs and the court likewise denies plaintiff's request to sanction Reynolds and allow plaintiff to recover all of his claimed costs. The court will, however, endeavor to disallow costs that appear to be attributable to plaintiff's unsuccessful claims as well as to plaintiff's claims against the now-dismissed defendant, American Tobacco. As such, the court proposes to tax costs against Reynolds as follows: $310 as fees of the clerk and marshal; $14,035.26 as fees of the court reporter; $1,665.46 as fees for witnesses; and $15,772.88 as fees for copies, for a total of $31,783.60.

## I.      Threshold Considerations

Before delving into the particular itemized expenses in plaintiff's bill of costs, the court will address several threshold considerations. First, Reynolds argues that the court should strike plaintiff's bill of costs or entirely deny it for a variety of reasons. Second, plaintiff argues that the court should sanction Reynolds for its conduct during the litigation in this case and award plaintiff all of his claimed costs. For the following reasons, the court declines to do either.

### A.      *Reynolds' Arguments to Strike or Entirely Deny Plaintiff's Bill of Costs*

The Federal Rules of Civil Procedure provide that "costs other than attorneys' fees shall be awarded *as of course* to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1) (emphasis added). The allowance or disallowance of costs is within the sound discretion of the district court. *Zeran v. Diamond Broad., Inc.*, 203 F.3d 714, 722 (10th Cir.

2000). The court's discretion, however, is constrained by the fact that Rule 54 creates a presumption that the court will award costs to the prevailing party. *Id.* When the court exercises its discretion and denies costs to a prevailing party, it must state a valid reason for doing so. *Id.* The court may deny costs when the prevailing party was only partially successful, when damages were only nominal, when costs were unreasonably high or unnecessary, when recovery was insignificant, or when the issues were close or difficult. *Id.* Denial of costs is a severe penalty, and therefore there must be some apparent reason to penalize the party if costs are to be denied. *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1526-27 (10th Cir. 1997).

Reynolds originally argued that the court should strike plaintiff's bill of costs because it was not verified as required by 28 U.S.C. § 1924 and by Form AO 133, and because plaintiff had not submitted sufficient information to allow the court to identify what items were claimed and whether they were properly recoverable as costs. Since Reynolds filed its motion, however, plaintiff has since filed an amended bill of costs on Form AO 133 containing a declaration signed under penalty of perjury that the costs are correct and were necessarily incurred in this action. Thus, plaintiff's bill of costs has now been verified. Additionally, plaintiff filed a supplement containing hundreds of pages of documentation itemizing his costs. As such, defendant's arguments on these issues are now obsolete. Reynolds then argues that the court should deny plaintiff's amended bill of costs because it was not submitted within the time limit of D. Kan. Rule 54.1(a), it was not submitted on Form AO 133, and it does not provide the detail required of AO 133 for allowable fees for witnesses. This case, however, was unusually lengthy and generated a voluminous record. Plaintiff timely filed his original

6

bill of costs and filed an amended bill of costs and supporting documentation within a reasonable period of time after the appeal mandate was filed in this court. Given the longevity, complexity, and contentiousness of this case, the court will not entirely deny plaintiff's costs for these reasons.

Reynolds argues that plaintiff makes no attempt to limit recovery to the costs allowable under § 1920. In this respect, the court notes that the Tenth Circuit has stated that the fact that "costs were unreasonably high or unnecessary" can serve as a valid reason for denying costs. Plaintiff's claimed half million dollar bill of costs would arguably fall in this category. The court will not, however, deny plaintiff's costs entirely for this reason. Instead, the court will tax only those costs to which he is statutorily entitled. After doing so, plaintiff's costs are reduced to only a fraction of his originally claimed costs. At that point, his costs are no longer unreasonable or unnecessary. Therefore, the court will not entirely deny his costs on that basis.

Reynolds argues that the court should exercise its discretion and deny plaintiff's costs because plaintiff lost far more claims than he won. Specifically, plaintiff ultimately prevailed on only 2 of his 11 claims in this case. To the extent that the court might have discretion to deny plaintiff's costs for this reason, *compare Roberts v. Madigan*, 921 F.2d 1047, 1058 (10th Cir. 1990) (trial court did not abuse its discretion by refusing to award costs to the party that prevailed on a majority of claims that were the central claims at issue); *Howell Petroleum Corp. v. Samson Res. Co.*, 903 F.2d 778, 783 (10th Cir. 1990) (trial court did not abuse its discretion by refusing to award costs to a party that was only partially successful), *with Barber*

*v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (10th Cir. 2001) (magistrate judge erred in granting costs to both parties where judgment was entered in favor of plaintiff; noting that usually the litigant in whose favor judgment is entered is the prevailing party for purposes of Rule 54); *Cantrell v. Int'l Bhd. of Elec. Workers*, 69 F.3d 456, 458 (party need not prevail on every issue to be considered a prevailing party for purposes of Rule 54), the court declines to do so.    Even without the punitive damage award, plaintiff still obtained a $196,416 judgment against Reynolds.    This is by no means a small amount, and it should not be overshadowed by the voluminous record that is largely attributable to the aggressive manner in which Reynolds chose to litigate this case.    Plaintiff's counsel did a commendable job of withstanding Reynolds' litigation tactics of resisting discovery via largely meritless claims of privilege, filing endless motions, and raising all plausible arguments on every minute point.    It took plaintiff more than eleven years to prosecute this lawsuit, to obtain a judgment against Reynolds, and to collect on that judgment.    The court has no doubt that plaintiff's counsel incurred significant amounts of statutorily recoverable costs in litigating this case.    Plaintiff ultimately prevailed, and the court will award him his statutorily recoverable costs incurred in doing so.

Along those same lines, Reynolds argues that the court should deny plaintiff's costs entirely because he has failed to differentiate the costs he incurred on his losing and dismissed claims from those upon which he ultimately prevailed.    The court will not entirely deny plaintiff's costs for that reason.    The court will, however, endeavor to disallow costs where the record reveals that plaintiff necessarily incurred those costs prosecuting claims upon which

he was ultimately unsuccessful. *See Barber*, 254 F.3d at 1234 ("[I]n cases in which the prevailing party has been only partially successful, some courts have chosen to apportion costs among the parties or to reduce the size of the prevailing party's award to reflect the partial success."). Nonetheless, the evidence at trial overlapped significantly on the claims on which plaintiff prevailed versus those on which he lost, and therefore the court is unpersuaded that plaintiff necessarily incurred significant additional costs prosecuting those claims on which he was unsuccessful. Therefore, the court will not categorically reduce or entirely disallow plaintiff's costs on this basis. The court will, however, disallow any costs that appear to be attributable solely to those claims.

The court will also disallow any costs that are attributable solely to plaintiff's claims against American Tobacco. Plaintiff is asking the court to tax costs against Reynolds, not American Tobacco. Plaintiff dismissed his claims against American Tobacco with prejudice and American Tobacco is therefore considered to be the prevailing party with respect to that aspect of the case. *See Cantrell*, 69 F.3d at 458 (dismissal with prejudice makes the dismissed defendant the prevailing party for purposes of Rule 54). Therefore, the court will not allow plaintiff to recover his costs inasmuch as they appear to be solely attributable to his now-dismissed claims against American Tobacco. With that being said, however, his claims against American Tobacco have never been a particularly significant part of this case. He predominantly smoked Camel cigarettes (manufactured by Reynolds) and smoked Lucky Strike cigarettes (manufactured by American Tobacco) only when he could not get Camels. In ruling on defendants' motions for summary judgment, the court found that the evidence against

American Tobacco was "thin" but sufficient to withstand summary judgment. *See Burton v. R.J. Reynolds Tobacco Co.*, 181 F. Supp. 2d 1256, 1271 (D. Kan. 2002). The jury assessed only one percent fault against American Tobacco. Plaintiff's efforts in prosecuting his claims against the two defendants overlapped significantly because the evidence largely pertained to the manner in which tobacco companies marketed cigarettes, the fact that plaintiff became addicted to cigarettes, and that he suffered from peripheral cardiovascular disease because of his addiction. Thus, the court will endeavor to disallow costs where the record reveals that those costs were necessarily incurred solely in prosecuting plaintiff's claims against American Tobacco. The court will not, however, categorically reduce or entirely disallow plaintiff's costs on this basis because the court is unpersuaded that plaintiff necessarily incurred significant additional costs in prosecuting this case against American Tobacco over and above the costs he necessarily incurred in prosecuting his case against Reynolds.

### B.    *Plaintiff's Request for Sanctions*

Plaintiff, on the other hand, asks the court to sanction Reynolds for deliberately and needlessly increasing the cost of this litigation by, in essence, litigating this case so aggressively. Plaintiff asks the court to sua sponte sanction Reynolds pursuant to Rule 11 of the Federal Rules of Civil Procedure for Reynolds' past conduct. Plaintiff asks the court to award him "the costs of all expert consultation fees, Westlaw charges, postage, and travel/lodging expenses." Just as the court finds Reynolds' arguments that the court should entirely deny plaintiff's costs to be unpersuasive, the court finds plaintiff's argument to be equally unpersuasive.

10

As much as the court might share plaintiff's disdain for Reynolds' litigation tactics in this case, sanctions under Rule 11 are not warranted as urged by plaintiff. "A Rule 11 sanction is *not* meant to reimburse opposing parties for their costs of defense." *Anderson v. County of Montgomery*, 111 F.3d 494, 502 (7th Cir. 1997) (emphasis in original) (holding the defendants were not entitled to full reimbursement of their costs of defense under Rule 11 just because the case was frivolous), *overruled on other grounds by DeWalt v. Carter*, 224 F.3d 607, 613-18 (7th Cir. 2000). Rule 11 applies to a party's representations made to the court by virtue of signing and presenting to the court a particular pleading, written motion, or other paper. Fed. R. Civ. P. 11(a), (b); *cf. Griffen v. City of Oklahoma City*, 3 F.3d 336, 339 (10th Cir. 1993) ("By its terms, Rule 11 only authorizes sanctions for the *signing* of a document in violation of the Rule." (emphasis in original)). It is not directed toward litigation conduct in general. Here, Reynolds litigated this case so aggressively that it would have worn down most plaintiff's attorneys. But it did so largely within the bounds of zealous advocacy. In doing so, Reynolds defeated many of plaintiff's claims, most significantly the $15 million punitive damage award. Thus, the court cannot find that the documents Reynolds filed with the court during this lawsuit generally ran afoul of Rule 11 by being presented for an improper purpose or by having no reasonable basis in law or fact. In short, the court will not sanction Reynolds in the manner suggested by plaintiff simply because Reynolds chose to devote such significant resources to this lawsuit. The court will allow plaintiff to recover those costs to which he is statutorily entitled – no less and no more – giving due weight to the fact that plaintiff necessarily incurred significant costs in this case because of Reynolds' litigation tactics.

11

## II.        Statutorily Recoverable Costs

The taxation of costs under Rule 54(d) is governed by 28 U.S.C. § 1920, which provides

that the judge or the clerk may tax as costs the following categories of expenses:

> (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any
> part of the stenographic transcript necessarily obtained for use in the case; (3)
> Fees and disbursements for printing and witnesses; (4) Fees for exemplification
> and copies of papers necessarily obtained for use in the case; (5) Docket fees
> under section 1923 of this title; (6) Compensation of court appointed experts,
> compensation of interpreters, and salaries, fees, expenses, and costs of special
> interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  The court has no discretion to award items as costs that are not set forth in

section 1920.  *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990).  Plaintiff, as the party

seeking his costs, has the burden of establishing the amount of compensable costs and

expenses to which he is entitled.  *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248-49 (10th

Cir. 2002).

### A.        *Fees of the Clerk and Marshal*

Plaintiff seeks $323.50 as fees of the clerk.  This includes a $120 filing fee (Supp.[1] at

276) which the court will allow.   The court will also allow plaintiff's $25 pro hac vice

admission fee (Supp. at  277).  A 10/6/94 docket entry reflects that this was for admission of

_____

[1] The court's reference to "Supp." refers to the Paginated Courtesy Copy of Plaintiff's
Supplement to Amended Bill of Costs which Reynolds provided to the court.  This courtesy
copy is a duplicate of the supporting documentation submitted to the court in plaintiff's
Supplemental Documentation to Amended Bill of Costs (Doc. 752), but has the additional
benefit of being paginated and therefore is much easier to reference.

Kenneth B. McClain, plaintiff's lead counsel.   The court finds that this fee was necessarily incurred in this case.   Thus, the court will allow a total of $145 as fees of the clerk.

Plaintiff's claimed costs also include a $10 pro hac vice fee for Nick Mebruer (Supp. at 280) and another $10 pro hac vice fee (Supp. at 281), which a 11/19/98 docket entry reflects was likely for admission of Nimrod T. Chapel, Jr.   The manner in which Messrs. Mebruer and Chapel were a necessary part of this case is not readily apparent to the court. Similarly, with respect to the $50 fee for admission to the Tenth Circuit (Supp. at 283), it is unclear what attorney was admitted to the Tenth Circuit or whether his or her admission was necessary to the case.   Plaintiff's claimed fees of the clerk also includes $63.50 on 10/28/94 documented by a check stub (Supp. at 278) stating that it was for a "Filing Fee."   A second filing fee, however, would not have been required and, notably, no filing fee was docketed by the clerk on or soon after that date.   Another $20 charge on 1/21/99 is documented by a check stub to the "District Court" (Supp. at 282).   Again, no fees of the clerk were docketed on or soon after that date.   A $25 charge on 10/17/95 is documented by a check stub that it was for a "Pro Hac Vice Fee" (Supp. at 279).   The check stub does not, however, provide the name of the attorney for whom pro hac vice admission was sought and the court's docket sheet does not reflect that any pro hac vice fees were docketed on or soon after that date.   Based on the present state of the record, then, plaintiff has failed to establish that any of these fees of the clerk were necessarily incurred in this case.   Accordingly, the court takes these issues under advisement pending supplemental briefing.

13

Plaintiff also seeks $350 as fees for service of summons and subpoena. Plaintiff's claimed service fees include $30 paid to the Secretary of State on 5/19/94. The docket sheet reflects that plaintiff effected service of process upon Reynolds via the Secretary of State (Return of Service, Doc. 3) and upon American Tobacco via a waiver of service of process (Waiver of Service, Doc. 11). Thus, plaintiff necessarily incurred this $30 service fee in effecting service of process on Reynolds, not American Tobacco, and the court will therefore allow this amount. Plaintiff also claims $225 to Agency One Investigations for subpoena service fees for depositions of Drs. Murray Senkus, Alan Rodgman, and Robert DiMarco at the rate of $75 each. The court finds that plaintiff necessarily incurred all of these service fees in preparing his case. Although plaintiff did not pay these fees to the marshal as expressly required by § 1920(1), service fees to private process servers are generally taxable up to the amount that would have been incurred if the U.S. Marshal's office had effected service. *See Griffith v. Mt. Carmel Med. Ctr.*, 157 F.R.D. 499, 508 (D. Kan. 1994). The cost for service by the marshal is $45. The court will therefore allow the cost of service of the three subpoenas up to $45 each, or $135. *See, e.g.*, *Kansas Teachers Credit Union*, 982 F. Supp. at 1447-48 (reducing the taxable cost of service of a subpoena to the then-$40 amount charged by the U.S. Marshal). The court, then, will allow $165 ($30 + $135) as fees of the marshal.

Plaintiff also claims $95 paid to the deputy sheriff in Eastham, Massachusetts, as a subpoena service fee for Arnold Henson's deposition (Supp. at 178). Mr. Henson was formerly legal counsel for American Tobacco. As discussed previously, American Tobacco

was the prevailing party with respect to that aspect of the case.  Therefore, the court will not tax against Reynolds the cost of serving Mr. Henson with a subpoena.

All total, then, the court will allow $310 as fees of the clerk and marshal, take the matter under advisement with respect to other claimed fees of the clerk, and otherwise disallow plaintiff's claimed fees of the marshal.

### B.    *Fees of the Court Reporter*

Plaintiff's bill of costs seeks $37,615.16 as fees of the court reporter.[2]  The court may tax as costs "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case."  28 U.S.C. § 1920(2).  Plaintiff seeks essentially two categories of court reporter fees under this category of taxable costs.  First, plaintiff seeks his costs for transcripts of various court hearings and trial.  Second, he seeks his costs for deposition transcripts.

### 1.    Transcripts of Court Hearings and Trial

The standard for taxation of costs for a transcript of in-court hearings and trial transcripts has been stated as follows:

> The basic standard . . . in determining whether to allow the expense of a transcript as a taxable cost is whether the transcript was "necessarily obtained

---

[2]  Exhibit B to plaintiff's response also lists additional costs as "Deposition and Trial Transcripts/Court Reporter Fees," including $638.15 (Supp. at 66), $685.12 (Supp. at 135), $733.05 (Supp. at 136-37), $762.37 (Supp. at 138-39), $771.30 (Supp. at 140-41), $803.18 (Supp. at 145-46), $757.28 (Supp. at 149), and $420 (Supp. at 728).  These items, however, were not listed as claimed court reporter fees in plaintiff's itemization in support of his bill of costs.  Thus, they are disallowed as court reporter fees solely because plaintiff did not claim them as such in his bill of costs.

for use in the case." This does not mean that the transcript must have been "indispensable" to the litigation to satisfy this test; it simply must have been "necessary" to counsel's effective performance or the court's handling of the case. The transcript may have been procured either for use at the trial or after the trial. But the words "use in the case" in Section 1920 mean that the transcript must have a direct relationship to the determination and result of the trial. Taxation will not be allowed if the transcript was procured primarily for counsel's convenience.

10 Charles Alan Wright et al., Federal Practice & Procedure § 2677, at 438-40 (3d ed. 1998).

Plaintiff and defendant shared the cost of a daily trial transcript. Plaintiff's share equaled $3,580 (Supp. at 333). "To award this premium for daily production, a court must find that daily copy was necessarily obtained, as judged at the time of transcription." *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1248 (10th Cir. 1988), *overruled on other grounds as recognized by Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1231 (10th Cir. 1996). This case was sufficiently lengthy, complex, and contentious that the court is persuaded that the cost of a daily transcript was reasonably necessary to plaintiff's trial preparation. Accordingly, the court will allow this cost. *See, e.g., Vornado Air Circulation Sys., Inc. v. Duracraft*, No. 92-1543-WEB, 1995 WL 794070, at *2 (D. Kan. Nov. 29, 1995) (court allowed cost of daily transcript notwithstanding the lack of prior approval where case was sufficiently complex that a daily transcript was reasonably necessary); *Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 878 F. Supp. 1417, 1426-27 (D. Kan. 1995) (same, where issues litigated were complex and trial was lengthy, and daily transcripts helped to focus issues, avoid repetitive testimony, and expedite trial), *aff'd*, 76 F.3d 1178 (Fed. Cir. 1996).

The court is unpersuaded, however, based on the record currently before the court that the various transcripts of in-court hearings were obtained for use in the case as opposed to being procured solely for counsel's convenience.   This includes the following expenses: $92 for transcript by Donna Mellegard for 6/17/96 status conference (Supp. at 315); $96 for transcript by John Bowen & Associates for 5/9/00 status conference (Supp. at 317); $53.25 for transcript by John M. Bowen for final pretrial conference (Supp. at 330); $74.25 for 1/24/02 limine conference by Becky Ryder (Supp. at 336); and $151.50 for hearing on 2/1/02 by Becky Ryder (Supp. at 337). *See, e.g.*, *Phillips USA, Inc. v. Allflex USA, Inc.*, No. 94-2012-JWL, 1996 WL 568814, at *1 (D. Kan. 1996) (cost of transcript of hearing was not taxed as costs where prevailing party did not meet its burden of establishing that the transcript was necessarily obtained for use in the case).   The court takes these issues under advisement pending supplemental briefing.

The court will disallow the cost of the $195 transcript of the punitive damage hearing (Supp. at 343) because plaintiff ultimately was not the prevailing party on that aspect of the case.

### 2.        Deposition Transcripts

"The costs of taking and transcribing depositions reasonably necessary for litigation are generally awarded to the prevailing party under 28 U.S.C. § 1920." *Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1339 (10th Cir. 1998).   Whether costs are for materials necessarily obtained for use in the case is an issue of fact to be determined based on the existing record or the record supplemented by additional proof. *U.S. Indus., Inc.*, 854 F.2d at

17

1245. The court must carefully scrutinize all items proposed as costs. *Id.* Necessity in this context means a showing that the materials were used in the case and served a purpose beyond merely making the task of counsel and the trial judge easier. *Id.* Necessity is judged in light of the facts known to the parties at the time the expenses were incurred. *Callicrate*, 139 F.3d at 1340.

Plaintiff seeks the cost of entire court reporter invoices that include not only the cost of the deposition transcripts themselves, but also additional charges for such items as minuscripts, keyword indices, ASCII disks, exhibits, and postage and delivery. The court will disallow these charges because they are for items for the convenience of counsel. *See Hutchings v. Kuebler*, No. 96-2487-JWL, 1999 WL 588214, at *3 (D. Kan. July 8, 1999) (costs of ASCII disks and minuscripts would not be taxed); *Albertson v. IBP, Inc.*, No. 96-2110-KHV, 1997 WL 613301, at *2 (D. Kan. Oct. 1, 1997) (delivery charges are not taxable as costs); *Ortega v. IBP, Inc.*, 883 F. Supp. 558, 562 (D. Kan. 1995) (postage associated with depositions was not taxable). Thus, the court will limit plaintiff's taxable costs to the cost of one transcript for each deposition that the court is persuaded was reasonably necessary for plaintiff's trial preparation.

First, the court will allow the costs of deposition transcripts that plaintiff actually used as evidence at trial. *U.S. Indus., Inc.*, 854 F.2d at 1246 (use at trial readily demonstrates necessity). This includes the cost of transcripts for Pamela Harris's depositions. The court will allow at least $199.50 for her deposition taken on 12/22/95 (Supp. at 292) at the court reporter's non-expedited rate (190 pages x $1.05 per page), and the court will take the matter

18

under advisement with respect to the additional charge for expediting the transcript because plaintiff has not yet established the necessity of expediting the transcript. The court will also allow $161.70 for Ms. Harris's second deposition on 12/29/95 (Supp. at 294) and $109 for the cost of the transcript of John Ward's deposition on 1/10/96 (Supp. at 298). The court will allow the cost of the transcript of Mr. Ward's deposition on 2/11/01 for $456.20 (Supp. at 340-341). Although the cost of this transcript was for "same day" service, the court is persuaded that this same day service was necessary due to the urgency of taking this deposition during trial. The court will also allow $1,212.75 for the cost of G. Robert DiMarco's deposition (Supp. at 328). In total, then, the court will allow plaintiff at least $2,139.15 as his costs for these deposition transcripts used at trial.

The court will also allow plaintiff his costs of deposition transcripts that were used on summary judgment. *See Tilton v. Capital Cities/ABC, Inc.*, 115 F.3d 1471, 1474 (10th Cir. 1997) (holding the district court properly taxed costs of transcripts that were used by the court in ruling upon a motion for summary judgment). This includes the cost of all three volumes of plaintiff's deposition – $336, $318, and $47.50 (Supp. at 284, 285, 318); $53.55 for Gary Kramer and $95 for Vinaya Koduri (Supp. at 291); $74 for Rosa Tolliver and $71 for James Redick (Supp. at 288); $51 for Thelma Burton (Supp. at 289); $70 for Barbara Stroer (Supp. at 290); $638.15 and $106.70 for David M. Burns (Supp. at 295-96); $33.88[3] for Thomas R.

---

[3] This invoice amount appears to be a typographical error because the invoice states that the deposition was 308 pages at $1.10 per page, or $338.80, but the court cannot find any support in the record to suggest that plaintiff actually paid the higher amount for Dr. McLean's deposition transcript.

McLean (Supp. at 301); $479.38 and $545.87 for Neil E. Grunberg (Supp. at 302-03); $741.90 and $1,313.85 for Alan Rodgman (Supp. at 316, 327); $485.80 for David V. Cossman (Supp. at 319-20); and $1,199.50 for Murray Senkus (Supp. at 325). The court will also allow two-thirds of the invoice located at Supp. at 307, or $1,655.03, as the costs for the depositions of John Robinson and David Townsend. The court finds that plaintiff necessarily incurred the costs of all of these deposition transcripts in order to withstand defendant Reynolds' motion for summary judgment. The court will therefore tax as costs $8,316.11 for these deposition transcripts.

The court is unable to conclude that plaintiff necessarily obtained any other deposition transcripts for use in the case based on the record currently before the court. The court recognizes that plaintiff may be able to demonstrate necessity with respect to some of the other deposition transcripts, *see Callicrate*, 139 F.3d at 1339-40 (court is empowered to find necessity and award costs as long as materials are reasonably necessary for use in the case, but depositions taken merely for discovery are not taxable as costs), and therefore the court takes the following itemized costs under advisement pending supplemental briefing: deposition transcripts for Mark Huber (Supp. at 286), deponent not specified (Supp. at 287), attorneys conferences, Roger Christensen, Harold Vande Haar, William Lewis, Helen Burton, and Floyd Bartlett (Supp. at 288), John Baeke (Supp. at 293, 304), deponent not specified (Supp. at 297), William P. Newman III (Supp. at 299), Kathie Allison (Supp. at 300), Zalman Amit (Supp. at 305), Warren Phillips (Supp. at 306), William Samuel Simmons (Supp. at 307), Jacqueline Oler (Supp. at 308), Richard W. Pollay (Supp. at 309), P. Caren Phelan (Supp. at 310), James

Martin (Supp. at 311), C. Robert Cloninger (Supp. at 312), John G. Pollock (Supp. at 313), Ronald J. Lukas (Supp. at 321), Deborah K. Hoshizaki (Supp. at 324), Harmon McAllister (Supp. at 326), and James Burns (Supp. at 331).   The court recollects that other deposition transcripts (e.g., Arnold Henson, Alonzo Hollinshed, and Ora Burton) were pertinent to plaintiff's now-dismissed claims against American Tobacco, not Reynolds, and the court does not intend to tax those costs against Reynolds.

In sum, the court will allow the following fees of the court reporter: $3,580 for the trial transcript, $2,139.15 for deposition transcripts used at trial, and $8,316.11 for deposition transcripts used to withstand defendant Reynolds' motion for summary judgment.   The total taxable fees of the court reporter, then, are $14,035.26.

**C.**     *Witness Fees*

Plaintiff claims $229,202.77 as costs for fees for "witness/experts."   Section 1920(3) allows the court to tax as costs "[f]ees and disbursements for . . . witnesses."   Expert witness fees are taxable under § 1920(3) only to the relatively modest extent allowed by 28 U.S.C. § 1821.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987); *Hull ex rel. Hull v. United States*, 978 F.2d 570, 572-73 (10th Cir. 1992) (district court erred in awarding expert witness fees in excess of those allowed by § 1821).   Section 1821 generally allows a $40 per day attendance fee plus travel and subsistence expenses related to attendance.

Therein lies the problem with the overwhelming bulk of plaintiff's claimed witness fees. Most are for non-attendance related expenses for expert witnesses such as consultations, affidavit production, medical record review, analysis, and preparation of expert reports and

disclosures.   These types of items clearly are not witness attendance fees or related travel expenses.   As such, they are not taxable.   The following expenses will be disallowed on that basis: $250 for consultation with Thomas McLean (Supp. at 180); $5,625 for affidavit production by Richard Pollay (Supp. at 182); $1,600 for economic analysis by John Ward (Supp. at 183); $2,945 for life care plan report and related expenses by Kathie Allison (Supp. at 184); $1,917.50 for chronology of events and $150 for record review by Jenny Beerman (Supp. at 185-86); $655 for affidavit and disclosure statement by Thomas McLean (Supp. at 187); $350 for consultation with John Hughes (Supp. at 188); $850, $2,500, and $3,650 for various expert expenses such as reviewing medical records, conferences, etc. by John  Baeke (Supp. at 181-91); $2,625.77 for evaluation of Mr. Burton by John Hughes (Supp. at 192); $2,625 for preparation of expert report by Neil Grunberg (Supp. at 193); $2,450 for preparation of expert report by David Burns (Supp. at 194); $2,400 for clinic review and analysis by Peter Tuteur (Supp. at 195); $1,187.50 for record review by Pamela Harris (Supp. at 196); $700 for deposition preparation by Davis Burns (Supp. at 197); $1,800 for deposition preparation by Peter Tuteur (Supp. at 198); $1,125 for reviewing information by Neil Grunberg (Supp. at 202); $6,927.71 for additional expenses of John Baeke (Supp. at 203); $450 for consultation with Allan Brandt (Supp. at 204); $800 for the deposition of Dr. Phillips, as it appears that he was a witness of American Tobacco (Supp. at 205); $1,875 for reviewing deposition transcript by Neil Grunberg (Supp. at 212); $1,062.50 for review of deposition transcript by John Baeke (Supp. at 214); $875 for reviewing records by Pamela Harris (Supp. at 215); $1,800 for record review and research by David Cossman (Supp. at 216); $1,012.50

for record review, research, report, etc. by Kathie Allison (Supp. at 219); $480 for economic report update by John Ward (Supp. at 220); $2,850 and $300 for record review and report by David Cossman (Supp. at 221-22); $140 for non-allowable deposition related time with Alan Rodgman (Supp. at 223); $12,075 for telephone conversations, document review, and drafting of declaration by Charles Tiefer (Supp. at 224-26); $3,750 for reviewing files and preparing report by John Ward (Supp. at 227); $5,050 for document review, research, and preparation of affidavit by John Ward (Supp. at 228); $9,625 for "digging for documents," arranging copying, reviewing records, and assisting with cross-examination by Mr. McLain by Charles Tiefer (Supp. at 229-30); $45 for Arnold Henson witness fee (Supp. at 246) because Mr. Henson was a witness of American Tobacco; $1,350 for deposition preparation by David Cossman (Supp. at 247); $630 for time spent by Alan Rodgman at deposition (Supp. at 248); $7,200 and $1,800 for supplementation of expert report by Neil Grunberg (Supp. at 249-50); $2,400 for record review and working on storyboard by David Cossman (Supp. at 253); $1,057.50 for record review, interviews, and cost analysis by Kathie Allison (Supp. at 254); $1,350 for trial preparation by Neil Grunberg (Supp. at 255); $500 and $2,000 for consulting with Third Millenium Consultants (Supp. at 256-57); $1,800 for record review and research by David Cossman (Supp. at 264); $900 for review of materials by Joel Cohen (Supp. at 265); $525 to "get documents" and review profits by John Ward (Supp. at 266), which is also disallowed because it was incurred in preparation for the punitive damage hearing; and $5,500 for preparation of affidavit by David Burns (Supp. at 267), which is also disallowed because it was incurred in preparation for the punitive damage hearing.   Additionally, the court will

23

disallow $16,379 to Maribeth Coller (Supp. at 268-70) and $38,962 to Harrison and Rutstrom Consulting, Inc. (Supp. at 271-75) because plaintiff incurred these expenses in association with the punitive damage phase of this case, a phase in which plaintiff ultimately was not the prevailing party.   The court will also disallow $2,500 to Richard Pollay (Supp. at 181) because the record does not reveal that this fee was related to his attendance at a deposition or at trial. In fact, given the early date of the check stub (October of 1994), it appears this was probably a consultation expense.

The court turns, then, to expenses related to particular witnesses' attendance at depositions and trials.  Dr. Grunberg's deposition was taken on January 22 and 23, 1996.  He is statutorily entitled to "an attendance fee of $40 per day for each day's attendance," § 1821(b), or $80 for the two days.  He is also statutorily entitled to his actual "parking fees," § 1821(c)(3), for those two days, or $20.  Thus, the court will tax Dr. Grunberg's witness fee in the amount of $100.  The remainder of Dr. Grunberg's invoice (Supp. at 199), or $2,908, will be disallowed as not recoverable under § 1821.

Dr. Baeke's deposition was taken on January 30, 1996.  He is entitled to a $40 attendance fee.   He also billed plaintiff $21.46 for his mileage, to which he is statutorily entitled.   § 1821(c)(2).   Thus, the court will tax Dr. Baeke's witness fee in the amount of $61.46.  The remainder of Dr. Baeke's invoice (Supp. at 200), or $6,972.50, will be disallowed as not recoverable under § 1821.

Dr. Grunberg's deposition was taken a second time on October 18, 2001.  He is entitled to a $40 attendance fee for that day.  He also billed plaintiff $50 for taxi fares, to which he is

24

statutorily entitled.  § 1821(c)(3).  Thus, the court will tax Dr. Grunberg's witness fee in the amount of $90.  The remainder of Dr. Grunberg's invoice (Supp. at 251), or $2,210, will be disallowed as not recoverable under § 1821.

Dr. Burns traveled from San Diego, California, to testify at trial.  His invoice reveals that he arrived in Kansas City the night before trial.  Thus, he is entitled to a two-day attendance fee of $80.  § 1821(b) (witness is paid attendance fee for each day's attendance plus attendance fee for time necessarily occupied in going to and returning from the place of attendance).  He is also statutorily entitled to $122 for the cost of "the car to and from the airport," which appears to have been for a taxi given the absence of parking costs.  Plaintiff paid $242.36 for Dr. Burns' lodging.  The cost of lodging is not taxable per se, but given the overnight stay he is entitled to a subsistence allowance not to exceed the maximum per diem allowance for the Kansas City metropolitan area in February of 2002.  § 1821(d)(1), (2).  This would have been $123 for the day with the hotel stay and $38 for the return day.  Thus, the court will tax Dr. Burns' witness fee for his trial testimony in the amount of $363.  The remainder of Dr. Burns' trial testimony invoice (Supp. at 259), or $8,501.36, will be disallowed as not recoverable under § 1821.

Dr. Grunberg traveled from Bethesda, Maryland, to testify at trial.  His invoice reveals that he was in Kansas City for one day and therefore is entitled to a one-day attendance fee of $40.  He is also entitled to his taxi fares of $90.  Although he billed plaintiff $45 for meals, that amount is not statutorily recoverable.  It is also not recoverable as a subsistence allowance because the record does not reveal that he stayed in Kansas City overnight.  *See* § 1821(d)(1)

25

(subsistence allowance is to be paid only when an overnight stay is required).  Thus, the court will tax Dr. Grunberg's witness fee for his trial testimony in the amount of $130.  The remainder of his trial testimony invoice (Supp. at 261), or $9,885, will be disallowed as not recoverable under § 1821.

Dr. Cossman traveled from Los Angeles, California, to testify at trial.  His invoice reveals that he arrived in Kansas City at least the day prior to his testimony.  Specifically, it states that he was in Kansas City for court on February 5 and 6, 2002.  The clerk's minute sheet, however, reveals that he testified at trial on February 7, 2002.  Therefore, if he arrived in Kansas City on February 5, his arrival was premature and the court will not tax costs for that day.  The court will, however, allow him a two-day attendance fee of $80 for February 6 and 7, 2002, and a subsistence allowance of $161 ($123 for the day with the hotel stay and $38 for the return day).  Thus, the court will tax Dr. Cossman's witness fee for his trial testimony in the amount of $241.  The remainder of his trial testimony invoice (Supp. at 263), or $11,759, will be disallowed as not recoverable under § 1821.

Many of plaintiff's other itemized expenses are partially taxable as witness attendance fees and partially non-taxable.  These include an invoice from Kathie Allison (Supp. at 201) for which the court will allow $40 as a deposition attendance fee and will otherwise disallow $897.50 for record review and meetings; an invoice from Thomas McLean (Supp. at 206-11) for which the court will allow $40 as a deposition attendance fee and will otherwise disallow $1,460 for other services rendered; an invoice from defense counsel (Supp. at 312) for which the court will allow $40 each for the depositions of Mr. Pollock, Dr. Oler, Dr. Newman, Dr.

26

Cloninger, and Dr. Amit and $80 for Dr. Martin's deposition (at 10 hours it appears this was a 2-day deposition) and will otherwise disallow $6,620 as beyond the statutory rate; a check stub for a witness fee to Stephen Goldstone (Supp. at 217) for which the court will allow $40 as a deposition attendance fee and will otherwise disallow $20 as beyond the statutory rate[4]; a check stub for a witness fee to Alan Rodgman (Supp. at 218) for which the court will allow $40 as a deposition attendance fee and will otherwise disallow $20 as beyond the statutory rate; a check for a witness fee to G. Robert DiMarco (Supp. at 231-35) for which the court will allow $40 as a deposition attendance fee and will otherwise disallow $27.88 as beyond the statutory rate; a check for a witness fee to Murray Senkus (Supp. at 236-40) for which the court will allow $40 as a deposition attendance fee and will otherwise disallow $22.84 as beyond the statutory rate; an invoice from David Burns (Supp. at 252) for which the court will allow $40 as a deposition attendance fee and will otherwise disallow $1,960 as beyond the statutory rate; an invoice from Pamela Harris (Supp. at 258) for which the court will allow $40 as a trial attendance fee and will otherwise disallow $1,710 as beyond the statutory rate; an invoice from John Ward (Supp. at 260) for which the court will allow $40 as a trial attendance fee and will otherwise disallow $1,860 as beyond the statutory rate; and an invoice from Kathie Allison (Supp. at 262) for which the court will allow $40 as a trial attendance fee and will otherwise disallow $1,265 as beyond the statutory rate.   Plaintiff has also included a copy of

---

[4] The court realizes that some of these rather modest additional sums exceeding the $40 daily attendance fee by approximately $20 may be for witnesses' mileage, but this is not substantiated by the record and therefore the court will not tax these amounts.

27

a check for a $61.25 witness fee to Alan Rodgman (Supp. at 241-45).  The court will not allow the $40 attendance fee because it appears that doing so would be duplicative of the check stub at Supp. at 218.

All total, then, plaintiff's claimed costs for witness fees are largely disallowed as being not recoverable under § 1821.  The court will, however, allow attendance, travel, and subsistence fees as outlined above for a total amount of $1,665.46.

### D.    Fees for Exemplification and Copies

Section 1920(4) permits the court to tax as costs "fees for exemplification and copies of papers necessarily obtained for use in the case."  Plaintiff seeks essentially two categories of expenses under this category of taxable costs.  First, he seeks his costs for animations that were used at trial.  Second, he seeks his costs for copies made throughout the duration of this case.

#### 1.    Animations

Plaintiff spent $40,429.85 for animations that were used during the expert testimony of Drs. Cossman and Grunberg at trial.  The term "exemplification," as used in § 1920(4), has been interpreted to embrace all kinds of demonstrative exhibits, including models, charts, photographs, illustrations, and other graphic aids.  *See Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 878 F. Supp. 1417, 1428 n.10 (D. Kan. 1995), *aff'd*, 76 F.3d 1178 (Fed. Cir. 1996).  Thus, the reasonable cost of preparing maps, charts, graphs, and kindred material is taxable when necessarily obtained for use in the case.  *Mikel v. Kerr*, 499 F.2d 1178, 1182 (10th Cir. 1974).  Here, the court is unpersuaded that this standard has been met.  Certainly,

the animations were impressive, helpful, and informative.  The court, however, cannot find that they were necessary to the presentation of plaintiff's case.  Rather, they merely illustrated the expert testimony of Drs. Cossman and Grunberg and thereby made the presentation of evidence at trial more effective and efficient.  This is insufficient to justify an award of costs.  *See Battenfeld of Am. Holding Co. v. Baird, Kurtz & Dobson*, 196 F.R.D. 613, 616-17 (D. Kan. 2000) (declining to tax costs of board exhibits which made the presentation of evidence at trial more effective and efficient); *Manildra Milling Corp.*, 878 F. Supp. at 1428 (denying request to tax $12,593.49 for enlargement and transparencies which were merely illustrative of expert testimony); *Green Constr. Co. v. Kan. Power & Light Co.*, 153 F.R.D. 670, 683 (D. Kan. 1994) (expense of items that merely illustrate expert testimony or other evidence are normally not taxable).  Accordingly, the court will not tax plaintiff's costs for animations.

### 2.     Copies

A copy is "necessarily obtained" within the meaning of § 1920(4) only where the court believes that its procurement was reasonably necessary to the prevailing party's preparation of its case.  *See Pehr v. Rubbermaid, Inc.*, 196 F.R.D. 404, 407-08 (D. Kan. 2000).  As a general rule, prevailing parties are not entitled to recover costs incurred in responding to discovery because the producing party possesses the original documents and, thus, such papers are not "obtained" for purposes of § 1920(4).  *See id.* at 408.  Plaintiff bears the burden of establishing that the costs are taxable.  *See id.* at 406-07.

Plaintiff has largely failed to meet this burden based on the record currently before the court.   Plaintiff's claims for copies of medical records, deposition related costs, litigation

copy costs, copies of exhibits for testifying experts, and copies from the clerk, all as categorized on Exhibit B to plaintiff's response brief (Doc. 756, Attachment 3, at 2-4), are largely documented by check stubs and invoices for copies and binding.  Without more meaningful explanation, the court is unable to determine the cost of copies that were necessarily obtained for use in the case and other case.  *See Battenfeld of Am. Holding Co.*, 196 F.R.D. at 617 (denying copy costs where prevailing parties submitted statements from copying services for thousands of copies without identifying the use made of the copied materials); *Green Constr. Co.*, 153 F.R.D. at 683 (same).  The court therefore takes these categories of costs under advisement and will allow plaintiff the opportunity to submit supplemental briefing to establish that these copies were necessarily obtained for use in the case as opposed to being made to respond to discovery requests.

The court will also take under advisement the following claimed expenses because of plaintiff's failure to establish their necessity to the case based on the record currently before the court: $25 for video tapes (Supp. at 10); $4.65 to copy video (Supp. at 13); $1,354.19 for audiotapes (Supp. at 29); $21.30 for videotape regarding "general tobacco" (Supp. at 77); $21.37 for videotape (Supp. at 165); $63.14 to digitize video (Supp. at 166); $8.01 for commercials video (Supp. at 167); $347.24 for encoding and editing cigarette commercials (Supp. at 169); and $1,662.56 and $64.17 for the cost of videotaping, editing, and copying the video of John Ward's deposition on 2/11/02 (Supp. at 170-71).[5]

---

[5] The court does recognize that under a proper demonstration of necessity the cost of videotaping a deposition can be properly recoverable.  *Tilton v. Capital Cities/ABC, Inc.*, 115

The court is, however, satisfied that the costs of plaintiff's trial exhibits were necessarily obtained for use in the case.  Plaintiff's counsel did a commendable job of utilizing the numerous documents that he compiled during the course of this litigation as exhibits at trial and the court is persuaded these documents were necessary to plaintiff's presentation of his case.  Thus, the court will tax the cost of plaintiff's trial exhibits, including copies for the jury, in the amounts of $3,460.53, $3,145.66, $1,466.15, at $4,729.52 (Supp. at 159, 161, 162, 164), for a total of $12,801.86.  *See Owens v. Sprint/United Mgmt. Co.*, No. 03-2371-JWL, 2005 WL 147419, at *4 (D. Kan. Jan. 21, 2005) ("Obviously, copies of trial exhibits were necessary for use in the case.").  The court will not tax the amount of $1,034.82 (Supp. at 158) because the invoice suggests that these were trial exhibits for use in plaintiff's case against American Tobacco.

For similar reasons, the court is satisfied that copies of documents plaintiff submitted to the court for in camera review were necessarily obtained for use in the case.  Plaintiff overwhelmingly prevailed in his battle against defendants' claims of privilege.  Counsel utilized these documents effectively at trial, and the court is persuaded that plaintiff was forced to combat defendants' claims of privilege in order to prevail in this lawsuit.  Thus, the court will tax the cost of plaintiff's copies for documents submitted to the court for review in August of 2000 in the amounts of $358.01, $1,473.07, $987.76, $60.76, and $91.42 (Supp. at 126, 128-

---

F.3d 1471, 1477 (10th Cir. 1997) (costs associated with videotaping a deposition are taxable under § 1920(2)).  But plaintiff has not met his burden of establishing the necessity of any such costs based on the record currently before the court.

31), for a total of $2,971.02. This, combined with the cost of trial exhibits, equals $15,772.88, and the court will tax this amount for copies.

The court finds no grounds to tax the following expenses based on the record currently before the court because the court is unpersuaded that these costs are recoverable under § 1920 and, in any event, they appear to have been incurred for claims upon which plaintiff ultimately did not prevail and/or against American Tobacco: $20,962.97 for Camel advertisements (Supp. at 22); $119.78 for editing commercials (Supp. at 25); $268.32 for editing commercials (Supp. at 27); $16,755.88 and $1,008.67 for reproducing video ads (Supp. at 31-36, 79); and $10,416.81 for copying Camel audio recordings (Supp. at 38). Accordingly, the court will disallow these expenses.

### E.    *Other Costs*

Lastly, plaintiff's bill of costs includes $83,767.43 for other costs. The court will disallow all of the itemized costs in this category because based on the record currently before the court the court is unable to find that any of these items are taxable under § 1920. Specifically, the court will disallow plaintiff's claimed Westlaw charges. *Jones v. Unisys Corp.*, 54 F.3d 624, 633 (10th Cir. 1995) ("[C]osts for computer legal research are not statutorily authorized . . . ." (internal quotation omitted)); *see also Sheldon v. Vermonty*, 237 F. Supp. 2d 1270, 1287 (D. Kan. 2002) (costs for electronic research are not taxable because they are not listed in § 1920), *aff'd as modified on other grounds*, 107 Fed. Appx. 828 (10th Cir. 2004); *Albertson v. IBP, Inc.*, No. 96-2110-KHV, 1997 WL 613301, at *1 (D. Kan. Oct. 1, 1997) (declining to award computer assisted research charges). The court will also disallow

plaintiff's Federal Express and Airborne Express delivery charges, *see Sheldon v. Vermonty*, No. 98-2277-JWL, 2004 WL 2782817, at *6 (D. Kan. Dec. 3, 2004) (Federal Express charges not recoverable under § 1920), and courier delivery charges, *see Stadtherr v. Elite Logistics, Inc.*, No. 00-2471-JAR, 2003 WL 21488269, at *3 (D. Kan. June 24, 2003) (delivery charges not recoverable); *Harris v. Oil Reclaiming Co.*, No. 97-1270-JTM, 2001 WL 395392, at *3 (D. Kan. Mar. 28, 2001) (same).

The court will also disallow all of plaintiff's counsel's travel expenses. *Augustine v. United States*, 810 F.2d 991, 996 (10th Cir. 1987) (district court did not abuse its discretion by refusing to tax counsel's travel expenses); *see also Centennial Mgmt. Servs., Inc. v. Axa Re Vie*, 196 F.R.D. 603, 607 (D. Kan. 2000) (denying counsel's travel expenses). This includes the costs of airfare, meals, tips, parking, car rentals, taxicabs, hotels, toll charges, and other miscellaneous expenses incurred while traveling. Counsel's costs for non-travel related expenses for legal research, long distance, telephone calls, postage, fax services, meals, and parking will also be disallowed. *See Ortega v. IBP, Inc.*, 883 F. Supp. 558, 562-63 (D. Kan. 1995) (denying costs for counsel's long distance phone calls, postage, fax services, mileage, and meals); *see also* 10 Charles Alan Wright et al., Federal Practice & Procedure § 2677, at 459-62 (3d ed. 1998) ("[T]axation is usually denied for expenses such as long-distance telephone calls, cables, taxi fares, messengers, travel by attorneys . . . [and] postage . . . ."). The court will also disallow plaintiff's claimed office supply expenses because they do not fall within the bounds of § 1920. *Sheldon*, 237 F. Supp. 2d at 1284.

33

The court will disallow the following claimed expenses because the current record is inadequate to allow the court to determine whether these items are taxable: DOC invoice for $106 (Supp. at 346); "FYI" expense invoice for $9 (Supp. at 356); photocopying and processing for $5 (Supp. at 393); "Copies / Wolfe Camera" for $54.07, $12.61 (court was unable to locate supporting documentation); trial supplies for $13 (Supp. at 631); check to Carolyn Rhodes for $40 (Supp. at 632); and trial supplies for $14 (Supp. at 634).   The court will also disallow the following costs for cigarettes, which plaintiff presumably purchased for use as trial exhibits, because they do not fall within the bounds of § 1920: Norman Ritchie for $12 for "Kool Kings" (Supp. at 626); vintage Lucky Strikes for $16.49 (Supp. at 640); and cigarettes for $381.10 from Harvey's Antiques (Supp. at 644).

## III.    Supplemental Briefing

The parties may submit supplemental briefs addressing the particular itemized costs that the court has taken under advisement and objecting to the court's proposed taxation of costs with respect to other particular itemized costs.   The parties should direct their arguments to the issue of clarifying the nature of particular itemized costs in an effort to help the court understand whether those costs are taxable under the parameters outlined above.   They are also welcome to, but need not, submit any additional evidentiary material that they believe to be pertinent to this matter.   They should not resubmit any supporting documentation that has already been presented to the court in conjunction with the issue of taxation of costs.

In an effort to streamline opposing counsel's and the court's review of plaintiff's contentions, those contentions should be presented in the following format: (1) a separately

numbered paragraph for each cost item; (2) state the page number upon which that particular

cost appears on plaintiff's itemization in support of his amended bill of costs; (3) state the

page number of Reynolds' paginated courtesy copy of the supplement containing the

supporting documentation for that particular cost; (4) briefly state why the particular cost

should be allowed or disallowed; and (5) state the amount that should be allowed or disallowed.

Plaintiff may file a supplemental brief no later than **November 4, 2005**.  Reynolds may file

a supplemental response brief no later than **November 18, 2005**, which should fairly meet the

substance of plaintiff's contentions in a corresponding numbered paragraph format and present

any additional contentions in the same format.   Plaintiff may file a supplemental reply brief

no later than **December 5, 2005**, which, again, continues to address these issues in numbered

paragraph format.


**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant R.J. Reynolds

Tobacco Company's Motion to Strike and Opposition to Plaintiff's Bill of Costs (Doc. 740)

is granted in part, denied in part, and taken under advisement in part as set forth above.


**IT IS SO ORDERED** this 20th day of October, 2005.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge


35